**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANNE MARIE GENNUSA, et al.,

Plaintiffs,

vs. Case No. 3:09-cv-1208-J-32MCR

DAVID SHOAR, et al.,

Defendants.

---

**ORDER**

Anne Marie Gennusa, a lawyer, and Joel Studivant, her client, allege that members of the St. Johns County Sheriff's Office violated their Fourth Amendment rights and the Federal Wiretapping Act by recording their attorney-client conversations in an interview room at the Sheriff's Office and by forcefully seizing Studivant's written statement. The parties filed cross motions for summary judgment (Docs. 27, 33), and the Court held hearings on these motions on April 1, 2011 and July 29, 2011, the transcripts of which are incorporated by reference (Docs. 35, 39). At the July 29, 2011 hearing, the Court identified several issues with the manner in which the case had been pled. In particular, the Court highlighted that, although no material facts were in dispute, the parties had failed to meet on a number of critical issues, thus leaving the Court unable to grant summary judgment for either party. In light of the Court's comments, the parties agreed that plaintiffs should file a second amended complaint and that the parties should then file new cross-motions. (Docs. 38,39.)

This case is now before the Court on the parties' cross-motions for summary judgment relating to the Second Amended Complaint. (Docs. 44, 52.) Although the Court

allowed the parties to replead so that they could better meet on the substantive issues, many of the parties' arguments have again gone unanswered. Defendants have been particularly unhelpful since, rather than responding to plaintiffs' arguments directly, "Defendants stand on [their] original Memorandum of Law [in support of their motion for summary judgment] as their argument in opposition to Plaintiff's pursuit of summary judgment." (Doc. 54 at 1.) Given the continued lack of engagement between the parties, the Court has deemed many of the parties' arguments to be conceded.

## I. BACKGROUND

This case arises from an interview of Studivant relating to his alleged violation of a domestic violence injunction. The interview was conducted by defendant Thomas Marmo, a St. Johns County detective, in an interview room located in the St. Johns County Sheriff's Office. Gennusa attended as Studivant's attorney. Although the interview was recorded and actively monitored by employees of the Sheriff's Office, plaintiffs were given no indication of this fact.[1]

Due to the recording, the events that transpired during the interview are undisputed.[2] When the interview began, Studivant initially agreed to prepare an affidavit relating to the

---

[1] The camera was not obviously recognizable, no signs warned of the possibility of surveillance, and plaintiffs were not told that they were being recorded or monitored. (Docs. 26-1 at 67-72; 26-2 at 30-31.)

Soon after the incidents giving rise to this case, however, the Sheriff's Office posted signs outside its interview rooms which clearly indicate that anyone entering the rooms is subject to recording. (Doc. 50-2 at 53-56.) According to Sheriff Shoar, an attorney who wishes to speak privately with her client must request access to a different room. (Id.)

[2] The Court has viewed the recording of the interview, which is attached as an exhibit to the Complaint. (Doc. 1-1.)

investigation. While Studivant was writing his statement, Marmo left the interview room and closed the door. At this time, when no officers were present, Studivant and Gennusa discussed matters related to the investigation. Gennusa then left the interview room and met with Marmo in his office. When Gennusa returned to the interview room, she informed Studivant that Marmo intended to arrest him. After a discussion with Gennusa, Studivant decided that he no longer wished to give Marmo his written statement.

Marmo returned to the interview room, and, after a heated discussion, Studivant and Gennusa refused to tender the statement. Marmo then exited the interview room and discussed the matter with his supervisor, defendant Brian Canova, a sergeant in the St. Johns County Sheriffs Office. During their discussion, the officers actively monitored plaintiffs in the interview room and watched Gennusa place the statement on a table. Cannova instructed Marmo to return to the interview room and take the statement. (Doc. 28-1 at 6-8.) As Marmo entered the room, he forcibly grabbed the statement from underneath Gennusa's hand. (Doc. 1-1.)

Marmo proceeded to arrest Studivant for violation of the domestic violence injunction and attached Studivant's statement to his arrest report. (Doc. 28-1 at 37-38.) A criminal prosecution was ultimately brought against Studivant, but the charges were dismissed after he entered into a deferred prosecution agreement. (Doc. 26-5 at 8-9.)

Plaintiffs filed this action against Marmo and Cannova in their individual capacities and against David Shoar in his official capacity as Sheriff of St. Johns County. Plaintiffs allege defendants violated their Fourth Amendment rights and the Federal Wiretapping Act by seizing Studivant's statement and recording their attorney-client conversations. Plaintiffs

seek money damages and an order enjoining the St. Johns County Sheriff's Office from secretly recording attorney-client conversations in the Sheriff's Office. (Doc. 41.)

## II. STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## III. DISCUSSION

### A. Plaintiffs' Claims Against Marmo and Canova (Counts I, II, III, V)

Counts I, II, III, and V of the Second Amended Complaint assert claims against Marmo and Canova in their individual capacities. Defendants contend that they are entitled to qualified immunity on each count. (Doc. 44.)

"Qualified immunity offers complete protection for government officials sued in their individual capacities." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation

omitted). "To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). Here, the parties do not dispute that Marmo and Canova were acting within their discretionary authority.

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate." Id. "Courts utilize a two-part framework to evaluate qualified immunity defenses." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010). The court first examines "whether the plaintiff's allegations, if true, establish a constitutional violation. If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" Id. (internal citations omitted). "In determining whether a constitutional right was clearly established at the time of violation, the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 1266 (quotation omitted); see also Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) ("Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.") (quotation omitted).

Whether qualified immunity applies "is a legal issue to be decided by the court." Cottrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir. 1996). While "the jury itself decides issues of historical fact that are determinative of the qualified immunity defense, . . . the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty." Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002). Here, because

there are no material disputes regarding "the who-what-when-where-why type of historical fact issues" that require a determination by the jury, the Court may rule as a matter of law on the qualified immunity issues. See Cottrell, 85 F.3d at 1488.

**1. Seizure of Studivant's Statement (Counts II, III)**

In Counts II and III of the Second Amended Complaint, plaintiffs allege that Marmo violated their Fourth Amendment rights by "ripping and snatching Mr. Studivant's statement from Ms. Gennusa's hands with such force as to break Ms. Gennusa's finger nail." (Doc. 41 at 8-10.) Plaintiffs further allege that Canova violated their Fourth Amendment rights by ordering Marmo to retrieve the statement and failing to halt or remedy the constitutional violation. (Id.)

In their cross-motions for summary judgment, the parties raise distinct and essentially uncontested arguments. Defendants contend that Marmo did not use excessive force in taking the statement from Gennusa. According to defendants, Marmo merely applied a "*de minimis*" level of force that was reasonable in nature and thus did not rise to the level of a constitutional violation. (Doc. 44 at 11-14.)[3]

Plaintiffs, however, do not respond to defendants' excessive force argument. Instead, plaintiffs contend that, regardless of whether Marmo employed excessive force, the seizure of Studivant's statement was *per se* unreasonable because it was taken without a warrant. (Doc. 52 at 10-13.) Defendants do not argue that any exceptions to the warrant requirement apply or otherwise respond to plaintiffs' argument.

[3] Defendants also assert that Studivant lacks standing to assert an excessive force claim because the force was directed at Gennusa. (Doc. 44 at 12.)

At the July 29, 2011 hearing, the Court stated that the parties were "passing each other in the night" because defendants had not responded to plaintiffs' claim of *per se* unreasonableness and plaintiffs had not responded to defendants' arguments regarding excessive force. (Doc. 39 at 8-9.) After giving the parties an opportunity to reargue their claims, however, they again chose not to address each other's arguments. The Court thus finds that plaintiffs have correctly conceded that Marmo did not use excessive force and defendants have correctly conceded that Marmo seized Studivant's property without any exception to the warrant requirement.

"The Fourth Amendment proscribes all unreasonable searches and seizures." Horton v. California, 496 U.S. 128, 133 n.4 (1990) (quotation omitted). "A 'seizure' of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property." Sodal v. Cook Cnty., Ill., 506 U.S. 56, 61 (1992) (quotation omitted). "[I]t is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Horton, 496 U.S. at 133 n.4 (quotation omitted). "The burden of proving an exception to the warrant requirement rests with the government." Untied States v. McGough, 412 F.3d 1232, 1237 n.4 (11th Cir. 2005).

Defendants have conceded that the statement, which had been written voluntarily, was Studivant's property.[4] Because Marmo's actions interfered with plaintiffs' "possessory

[4] Moreover, the text of the Fourth Amendment specifically identifies a person's "papers" as being entitled to protection. See U.S. Const. amend. IV ("The right of the people to be

interests" in the statement, his actions constituted a "seizure" of property under the Fourth Amendment. Marmo's seizure was unreasonable because he did not obtain a warrant and has not argued that any exception to the warrant requirement applied.[5] Moreover, defendants are not entitled to qualified immunity since it would be clear to any reasonable officer that seizing Studivant's personal papers without a warrant or exception to the warrant requirement was unlawful. See e.g., O'Rourke v. Hayes, 378 F.3d 1201, 1208-09 (11th Cir. 2004) (holding that a search conducted without a warrant or exigency justifying the search "violated rights that are clearly established under . . . general statements of [Fourth Amendment] principle").

Because there are no material disputes of fact, plaintiffs are entitled to summary judgment on their unreasonable seizure claims in Counts II and III.[6] Defendants' motion for

---

secure in their persons, houses, *papers*, and effects, against unreasonable searches and seizures, shall not be violated . . . .")(emphasis added). As Chief Judge Kozinski has explained, "[p]apers are personal property . . . . What makes papers special—and the reason they are listed alongside houses, persons and effects—is the ideas they embody, ideas that can only be seized by reading the words on the page." United States v. Seljan, 547 F.3d 993, 1017 (9th Cir. 2008) (Kozinski, J., dissenting).

[5] Both Marmo and Canova are liable for the seizure of Studivant's statement. A supervisory official may be liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Although Marmo physically seized the statement, Canova instructed Marmo to enter the room and take the statement. (Doc. 28-1 at 6-8.) Additionally, Canova watched the events transpire and took no action to return the statement or otherwise remedy the situation.

[6] Defendants do not challenge either plaintiffs' standing to assert a claim of unreasonable seizure. Even if such a challenge had been raised, however, the Supreme Court has "discarded reliance on concepts of 'standing' in determining whether" a Fourth Amendment violation has occurred; instead, the inquiry "is simply whether the defendant's rights were

summary judgment is thus due to be denied as to Counts II and III.

**2. Recording of Plaintiffs' Communications (Counts I, V)**

Plaintiffs next contend that Marmo and Canova's actions in recording their attorney-client conversations violated the Fourth Amendment and the Federal Wiretapping Act, 18 U.S.C. § 2510, et seq. (Doc. 15 at 12.) "[T]he Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements." Katz v. United States, 389 U.S. 347, 352 (1967). "The constitutional question is whether the person invoking its Fourth Amendment protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." United States v. McKinnon, 985 F.2d 525, 527-28 (11th Cir. 1993). To prove a violation, a plaintiff therefore must show both that he had a subjective expectation of privacy and that his "subjective expectation of privacy is one that society is willing to recognize as reasonable." Id.

The Federal Wiretapping Act provides a civil cause of action against any person or entity that intercepts, or procures any other person to intercept, any wire, oral, or electronic communication. §§ 2511(a), 2520(a). An "oral communication" is defined under the Act as

---

violated by the allegedly illegal search or seizure." United States v. Salvucci, 448 U.S. 83, 87 n.4 (1980); see also United States v. Thompson, 928 F.2d 1060, 1064 (11th Cir. 1991) ("[T]o determine whether a defendant may challenge a search and seizure as a violation of his Fourth Amendment rights the correct inquiry is no longer whether an individual has standing to challenge a search separate and apart from the merits of his challenge.") (quotation omitted). Because Studivant created the statement and placed it in the care of his attorney, the Court finds that both plaintiffs had a possessory interest in the statement which was entitled to the protections of the Fourth Amendment. See, e.g., DeMassa v. Nunez, 770 F.2d 1505, 1506-07 (9th Cir. 1985) (holding that a client had a legitimate expectation of privacy in papers held by his attorney).

"any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." § 2510(2). The Eleventh Circuit has held that courts should apply the Fourth Amendment's reasonable expectation of privacy test to determine whether the "oral communication" requirement under the Act has been met. See McKinnon, 985 F.2d at 527-28 ("Hence, the statutory and constitutional test is whether a reasonable or justifiable expectation of privacy exists").

There is no material dispute of fact regarding plaintiffs' subjective expectations that their conversations were private. (Docs. 26-1 at 67-72; 26-5 at 58.).[7] However, defendants contend that plaintiffs' claims fail because their expectations of privacy were not reasonable. (Doc. 44 at 7-11.) Defendants further assert that, even if the recording violated plaintiffs' rights, qualified immunity applies because those rights were not clearly established. Plaintiffs assert that, while ordinarily a suspect may not have a reasonable expectation of privacy in a police interrogation room, attorney-client conversations are treated differently. (Doc. 52 at 15-20.)

Confidential attorney-client communications are the foundation of the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common

---

[7] Defendants have suggested that Gennusa doubted that her conversation was private because, at one point in the video, she cautions Studivant not to discuss something. (Doc. 44 at 9.) After having viewed the video, the Court finds that there is no factual basis to doubt plaintiffs' uncontroverted testimony that they were subjectively unaware of the recording. See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir.2006) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.") (quotation omitted).

law." Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1414 (11th Cir. 1994). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. " Upjohn Co. V. United States, 449 U.S. 383, 389 (1981). It "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." Id. (quoting Hunt v. Blackburn, 128 U.S. 464, 470,(1888)). Courts have thus held that an expectation of privacy in attorney-client communications is one that society is willing to recognize as reasonable. See, e.g., DeMassa v. Nunez, 770 F.2d 1505, 1506-07 (9th Cir. 1985) ("It is axiomatic that the attorney-client privilege confers upon the client an expectation of privacy in his or her confidential communications with the attorney."); In re State Police Litigation, 888 F. Supp. 1235, 1256 (D. Conn. 1995)) ("[W]here no consent exists, and where conversations consist of privileged communications between clients and their attorneys, an expectation of privacy is reasonable.")

Starting from the premise that an expectation of privacy is reasonable when a lawyer and her client speak alone about privileged matters, the particular facts of this case only reinforce the objective reasonableness of plaintiffs' expectation.[8] Because "the Fourth

[8] Plaintiffs' subjective expectation of privacy and that their conversations occurred within the attorney-client relationship readily distinguish this case from many others in which a party has unsuccessfully asserted a Fourth Amendment claim arising from the recording of a conversation with a co-defendant or family member in a police interview room. See, e.g., United States v. Swift, 623 F.3d 618, 622 (8th Cir. 2010) (no reasonable expectation of privacy in a conversation with a co-defendant where the suspect "recognized the likelihood

Amendment protects people, not places," Katz, 389 U.S. at 352, it is not dispositive that plaintiffs' conversation took place in a police interview room. "[I]n the prison setting, attorney-client communications generally are distinguished from other kinds of communications and exempted from routine monitoring." Lonegan v. Hasty, 436 F. Supp. 2d 419, 432 (E.D. N.Y. 2006); see also, e.g., Evans v. Inmate Calling Solutions, No. 3:08–cv–00353–GMN–VPC, 2011 WL 7470336, at *15 (D. Nev. July 29, 2011) ("[I]t is objectively reasonable for confidential communication between an inmate and his attorney to remain private."); Sowards v. City of Milpitas, No. C-03-3036-JF, 2005 WL 1566540, at *3 (N.D. Cal. July 5, 2005) (holding that the police violated the Fourth Amendment by

---

that officers were watching him"); United States v. Delibro, 347 F. App'x 474, 475 (11th Cir. 2009) (no reasonable expectation of privacy when the suspect "was well aware that law enforcement could be monitoring his conversations" with his mother); State v. Wilkins, 868 P.2d 1231, 1238 (Idaho 1994) ("Absent some special circumstance, the overhearing and transcription of a conversation between a person detained and the person's visitors in a jailhouse visiting room does not violate the detained person's Fourth Amendment rights.") Unlike attorney-client communications, society does not have an interest in preserving the confidentiality of such conversations that would override the value of disclosure.

The cases relied on by defendants, Johnson v. State, 730 So. 2d 368 (Fla. 5th DCA 1999), and Boyd v. State, 17 So. 3d 812 (Fla. 4 DCA 2009) are similarly distinguishable. In Johnson, the court affirmed the trial court's decision not to exclude a recording of a conversation between the defendant and his wife that took place in a police interview room. The court found that the defendant did not have a reasonable expectation of privacy where the police had not fostered any such expectation and there was strong evidence that the defendant and his wife did not subjectively believe their conversation was private. Johnson, 730 So. 2d at 369-70. Moreover, in Boyd, the court affirmed the trial court's decision to admit a recording of a conversation between two suspects who were husband and wife. 17 So. 3d at 814-17. Because the husband and wife were both suspects (and were aware of this fact), Boyd is analogous to cases in which courts have found that co-defendants did not have reasonable expectations of privacy in similar situations. While there is language in the court's opinion in Boyd that could be construed to suggest that a party can never have a reasonable expectation of privacy in a conversation that is recorded by a third party, 17 So. 3d at 818, such an interpretation would put the court's opinion squarely at odds with the Supreme Court's opinion in Katz.

recording an attorney-client conversation in an interrogation room).[9] But see Deegan v. Rudman, No. 3:10-cv-00016, 2011 WL 251226, at *4-5 (W.D. Va. Jan 26, 2011) (holding that a plaintiff did not have a reasonable expectation of privacy in a telephone conversation with his attorney which took place in a police interrogation room).[10] This is because the need for confidential attorney-client communications and the informed legal assistance they facilitate is no less pressing in a police station or jailhouse setting than in other circumstances. See Lanza v. State of New York, 370 U.S. 139, 143-44 (1962) ("[I]t may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection.").[11]

Moreover, when the police take actions during an interview or interrogation which suggest that a suspect's conversations will be private, an expectation of privacy is more reasonable. See Cox v. State, 26 So.3d 666, 676 (Fla. 4th DCA 2010); State v. Munn, 56 S.W.3d 486, 496 (Tex. 2001); State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985); see also Larzelere v. State, 676 So.2d 394, 405 (Fla. 1996) (in finding that no Fourth Amendment

---

[9] The court in Sowards ultimately held that the plaintiff's rights were not clearly established based, in part, on the fact that the attorney was a fact witness to the crime under investigation. Id. at *4.

[10] The court's decision in Deegan can be distinguished on two grounds: 1) the plaintiff had already been arrested; and 2) the plaintiff spoke with his attorney over the phone, and only the plaintiff's side of the conversation was recorded. Id.

[11] In federal prisons, "[t]he recording of inmate and attorney conversations is generally not permitted except under narrow circumstances." United States v. Ramos-Gonzalez, No. 07–0318 (PG), 2010 WL 4181674, at *7 (D. P.R. Oct. 25, 2010) (citing 28 C.F.R. § 543.13(e)). Although the law governing federal prisons is not applicable here, it further demonstrates that society has recognized the need for confidential attorney-client communications in the prison and police station context.

violation occurred, noting that the police did nothing to foster an expectation of privacy). Here, Marmo's actions in closing the door to the interview room when exiting and allowing plaintiffs to speak alone fostered an expectation of privacy. Cf. North v. Superior Court, 502 P.2d 1305, 1311 (Cal. 1972).  This is especially true given that people generally believe conversations with their attorneys will be kept privileged and confidential.  It is also objectively reasonable for a suspect to rely on his attorney's opinions regarding confidentiality and the attorney-client privilege.  Gennusa clearly conveyed to Studivant that she believed their conversations were private by providing legal advice, discussing legal strategy (such as whether to provide the written statement to the police), and asking questions regarding the subject of her representation.

As a local criminal defense attorney, Gennusa also had additional reasons to conclude that her conversations with Studivant were private.  She testified that, in the past, when police interviews with her clients had been recorded, she had been informed of this fact so that she could arrange for private communications. (Doc. 26-1 at 67-72.)  Gennusa further testified that, as a member of the local defense bar, she had been told that the Sheriff's Office recorded only confessions and statements from suspects rather than the full contents of all interviews. (Id.)  No reasonable attorney in Gennusa's position would have expected that her  conversations with her client were being actively monitored and recorded when no officers were present in the room.

Considering these facts, the Court holds that plaintiffs had a reasonable expectation of privacy in the attorney-client conversations held in the police interview room.  The surreptitious recording of these conversations thus violated the Fourth Amendment and

constituted an actionable interception of an "oral communication" under the Wiretapping Act.

Moreover, defendants are not entitled to qualified immunity because their actions violated plaintiffs' clearly established rights.  Although there appears to be no case precisely on point, the Supreme Court has held that "a constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  Hope v. Pelzer, 536 U.S. 730, 741(2002); see also Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) ("While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them.  A principle of constitutional law can be 'clearly established' even if there are notable factual distinctions between the precedents relied on and the case then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.") (quotations omitted).  Since at least the Supreme Court's decision in Katz, it has been clearly established that the Fourth Amendment prohibits the police from electronically intercepting communications without a warrant when the speakers have a reasonable expectation of privacy.  This is especially clear when the intercepted communications involve privileged attorney-client communications.  See Lonegan, 436 F. Supp. 2d at 436-39 (holding that, under precedent such as Katz, prison officials were not entitled to qualified immunity with respect to their actions in recording attorney-client conversations).  Under the facts of this case, this rule applies "with obvious clarity" to defendants' actions in secretly recording and actively monitoring plaintiffs' private attorney-

client conversations. Hope, 536 U.S. at 741.[12]

This might be a different case if the recording of attorney-client discussions had been mistaken, inadvertent, or fleeting. But this was none of that: it was a purposeful and advised recording and monitoring of privileged communications by law enforcement officers who then used the information learned to try to advance their case against Studivant.

Because no material facts are in dispute with respect to Counts I and V, plaintiffs' cross-motion for summary judgment is due to be granted, and defendants' motion is due to be denied.

**B. Plaintiffs' Claims Against Sheriff Shoar (Counts IV, VI, VII, VIII)**

Plaintiffs assert claims against Sheriff Shoar in his official capacity as Sheriff of St. Johns County. "It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." Manders v. Lee, 285 F.3d 983, 990 (11th Cir. 2002). Because Sheriff Shoar is an agent of St. Johns County, "in all respects other than name," plaintiffs' claims are against the County. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

**1. Counts IV and VI**

In Counts IV and VI, plaintiffs allege that Sheriff Shoar instituted a policy or custom of taping attorney-client conversations without the knowledge or consent of the attorney or

---

[12] While the Court does not pass on its constitutional bona fides, the Sheriff's post-hoc decision to post a sign warning those who enter the interview room they may be recorded arguably might put an attorney on notice to request a different, private location to speak to her client.

client. Plaintiffs claim this policy violated their rights under the Fourth Amendment and the Federal Wiretapping Act, thus giving rise to municipal liability under section 1983. (Doc. 41 at 10-13.)

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997). A plaintiff may establish liability pursuant to a municipal policy when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).[13] "To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001) (quotation omitted).

To demonstrate municipal liability, a plaintiff must also establish a "direct causal link

[13] However, "the mere delegation of authority to a subordinate to exercise discretion is not sufficient." Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989). The Eleventh Circuit has "strictly interpreted Monell's policy or custom requirement to preclude § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion. In other words, final policymaking authority over a particular subject matter does not vest in an official whose decisions are subject to meaningful administrative review." Doe v. School Board of Broward Cnty., Fla., 604 F.3d 1248, 1264 (11th Cir. 2010) (quotation omitted). However, an official with final policymaking authority may ratify the actions of a subordinate by "actively endorsing or approving" their conduct. Garvie v. City of Fort Walton Beach, Fla., 366 F.3d 1186, 1189 (11th Cir. 2004).

between a municipal policy and the alleged constitutional injury." Amer. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, Fla., 637 F.3d 1178, 1187 (11th Cir. 2011). "When a municipal policy itself violates federal law, or directs a municipality to do so, resolving issues of fault and causation is straightforward." Id. (citation omitted). However, "[i]f a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Id. (citation omitted).

Plaintiffs argue that St. Johns County is liable under section 1983 because "the Sheriff's office standard procedure is to record all interviews without regard to the attorney-client privilege." (Doc. 52 at 14.) The written policy of the Sheriff's Office gives detectives discretion regarding when to record interviews and statements. (Doc. 50-1 at 4.)[14] Nothing in the written policy, however, encourages detectives to surreptitiously record attorney-client communications. (See id.)[15] Because the County's written policy does not itself violate federal law or direct an officer to do so, plaintiffs must show that the policy was adopted with "deliberate indifference" to their constitutional rights. Plaintiffs, however, have not attempted to make such a showing, and also have failed to establish that the alleged violation of their rights was caused by a custom of St. Johns County. The Court therefore cannot grant summary judgment in plaintiffs' favor.

---

[14] This discretion is subject to "the approval of his/her supervisor." (Id.)

[15] Moreover, plaintiffs have not argued in their motion for summary judgment that any official with final policymaking authority violated their rights or ratified any such violation.

Sheriff Shoar, however, has not moved for summary judgment on the grounds that the policy or custom requirement has not been met. Instead, Sheriff Shoar simply argues that the County cannot be liable because plaintiffs' rights were not violated. (Doc. 44 at 11.)

The Court alerted the parties to these inadequacies at the July 29, 2011 hearing. Specifically, the Court stated that plaintiffs' evidence was likely insufficient to establish municipal liability, but that Sheriff Shoar had not moved for summary judgment on that ground. (Doc. 39 at 10.) While plaintiffs seem to have been unable to discover the required evidence,[16] Sheriff Shoar's continued failure to raise such an obvious issue, after the Court's comments, is inexplicable.

Ordinarily, under these circumstances the Court would deny Sheriff Shoar's motion for summary judgment and proceed to trial.  However, because the facts of this case are undisputed, the Sheriff's motion is due to be granted on each of plaintiffs' municipal liability claims; it would thus be a waste of resources to go to trial on this issue.  Under Rule 56(f), "[a]fter giving notice and a reasonable time to respond, the court may: . . . grant the motion on grounds not raised by a party; or, consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(2); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir.

---

[16] In his deposition, Sheriff Shoar made several statements that would refute any claim that the County's policy was adopted with "deliberate indifference."  For example, he stated that when the policy was discussed internally at the Sheriff's Office, he believed that people ordinarily assumed they were being recorded and that "99 percent of the time attorneys aren't in those rooms."  (Doc. 50-2 at 54-55.)  Sheriff Shoar also stated that, prior to the incident at issue in this case, he had not been made aware of a previous instance of an attorney and her client being recorded in an interview room without the presence of an officer. (Id. at 74.)

2011)("A court may grant a motion for summary judgment on grounds not raised by a party only 'after giving notice and a reasonable time to respond.'") (quoting Fed. R. Civ. P. 56(f)). The Court gave plaintiffs sufficient notice at the July 29, 2011 hearing, and, despite undertaking additional discovery, plaintiffs have been unable to develop this issue. (Doc. 39 at 10.) Because, as a matter of law, plaintiffs have not created an issue of fact regarding municipal liability, summary judgment is due to be granted for Sheriff Shoar on Counts IV and VI, and plaintiffs' cross-motion for summary judgment is due to be denied.

**2. Counts VII and VIII**

In Counts VII and VIII, Gennusa alleges that Sheriff Shoar illegally intercepted her oral communications with different, unnamed clients in attorney-client meeting rooms at the St. Johns County Correctional Facility. (Doc. 41 at 14-16.) These meeting rooms are in a different facility from the interview room at the Sheriff's Office which gives rise to the other counts. Gennusa now concedes that, because the cameras in these meeting rooms have no audio or video recording capability, Sheriff Shoar is entitled to summary judgment on Counts VII and VIII. (Doc. 52 at 15.)

**C. Damages**

Because summary judgment is due to be granted for defendants on Counts IV, VI, VII, and VIII, plaintiffs no longer have a claim for injunctive relief. While plaintiffs are entitled to summary judgment on Counts I, II, III, and V, it appears that plaintiffs may be entitled only to statutory damages under the Federal Wiretapping Act,[17] and attorneys' fees, costs and

[17] Pursuant to 18 U.S.C. § 2520(c)(2), the Court "may" impose the greater of actual damages suffered by plaintiffs, $100 a day for each day of violation, or $10,000 in statutory

perhaps relatively minimal compensatory or nominal damages on the other counts.[18]   To avoid additional time and expenses, the parties therefore should try to resolve the issues of damages and fees in a settlement conference with Magistrate Judge Richardson.

Accordingly, it is hereby

**ORDERED**:

1.  Plaintiffs' Motion for Summary Judgment (Doc. 52) is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is **GRANTED** with respect to Counts I, II, III, and V, but is otherwise **DENIED**.

2.  Defendants' Renewed Motion for Final Judgment (Doc. 44) is **GRANTED IN PART AND  DENIED IN PART**.  Summary judgment is **GRANTED** with respect to Counts IV, VI, VII, and VIII and is otherwise **DENIED**.

3.   This case is referred to the Honorable Monte C. Richardson, United States Magistrate Judge, to conduct a settlement conference.  The parties should contact Judge Richardson's chambers at 904-301-6740 to coordinate the settlement conference.

4.  If the case is not settled, the Court will set a status conference to determine how to resolve the damages and fees issues.

---

damages.

[18] Studivant ultimately entered into a deferred prosecution agreement; therefore it does not appear that either the written statement or recording were ultimately used against him.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of July, 2012.

TIMOTHY J. CORRIGAN
United States District Judge

js.
Copies to:
Hon. Monte C. Richardson
Counsel of Record